Anthony Urie
Law Office of Anthony Urie
7545 – 15th Avenue NW
Seattle, WA 98117
Phone: 206-784-6100
Fax: 206-784-6478
Attorney for Plaintiff

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| FIRE ISLAND FISHERIES CORPORATION, a Washington Corporation,<br><br>                    Plaintiff,<br>vs.<br><br>QUALITY MARINE OF ALASKA, an Alaskan Corporation; et.al,<br><br>                    Defendant, | NO. A04-0253CV (RRB)<br><br>**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

COMES NOW plaintiff by and through it's counsel of record and moves this court entry of an Order of Summary Judgment on the issue of liability in plaintiff's favor. This motion is based upon the files, pleadings, depositions, declarations and records herein.

## I.     THE SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has an initial burden of showing that there is no genuine issue of material fact by "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. (Internal Citations omitted) *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

Where, as in this case, the non-moving party will bear the burden of proving the material issue at trial, it <u>must</u> respond by going beyond the pleadings and <u>must</u> by its own affidavits, depositions, answers to interrogatories, and admissions on file identify facts sufficient to establish the existence of a genuine issue. *Celotex Corp. v. Catrett,* 477 U.S. 317 at 322, 324.

A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. It is not the court's function at the summary judgment stage to determine credibility or decide the truth of the matter. *See id.* at 249, 255. Rather, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. On a motion for summary judgment, all reasonable doubt as to the

existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976).

## II. STATEMENT OF FACTS

The F/V STARRIGAVAN is a 58 foot steel vessel built in 1973 by J &S Marine in Brazoria Texas. It is owned by Fire Island Fisheries of Kirkland, Washington.

In November 2003, Quality Marine of Alaska was a corporation located in Seward, Alaska involved in the repair of vessels. Dennis Butts was the President of Quality Marine and his wife, Theresa Butts was the Secretary/Treasurer. Ernest Carmin, Justin Delavega, Ron Sprous and John Welsh were employees of Quality Marine. *Opinion Letter of plaintiff's expert Kirk Greiner at 2-3, Deposition of Dennis Butts 4-6.*

Bruce Lewis, on behalf of Fire Island Fisheries, contacted Dennis Butts requesting that Quality Marine make repairs to the Starrigavan in late October 2003. *Declaration of Dennis Butts.at 14-17.* They were to replace the vertical exhaust pipe of the vessel's engine which apparently leaked exhaust gasses into the vessel's interior; they also were to perform some electrical and electronic work. *Greiner Letter at 2-3, Deposition of Dennis Butts 14-17.* On behalf of Quality Marine, Dennis Butts agreed to perform the work. A deposit on the work to be performed was paid on October 29, 2003. No written contract was entered into. *Id.*

The vessel arrived in Seward Alaska on or about October 26th, 2003 and was lifted from the water by the City of Seward's travel lift at the City of Seward Industrial Center and placed on keel blocks ashore owned by Quality Marine. *Greiner Letter at 2-3, Deposition of Dennis Butts at 17-19.* The City of Seward prohibited the vessel's crew from working on the vessel because of inadequate insurance. Captain Lee Morris, who

had brought the vessel down from Kodiak, turned the STARRIGAVAN over to Quality Marine and departed Seward. *Greiner Letter at 2-3, Deposition of Dennis Butts at 17-19.*

On November 12, 2003, employees of Quality Marine were working on the vessel. According to Mr. Butts, who was in charge but not present, Ernest Carmin, and Justin Delavega were assigned the duty as fire watch and John Welsh was the welder performing the removal the old exhaust pipe which would have required burning or cutting of the old steel exhaust system with a torch, and welding new pipe in place. *Greiner Letter at 2-3, Deposition of Dennis Butts at 20-26.*

Dennis Butts concedes that none of the vessel's crew was present and none of the vessel's equipment was in operation. Electrical power was brought aboard by Quality Marine to provide lighting and for the work by Quality Marine. *Greiner Letter at 2, Deposition of Dennis Butts at 30.* He concedes that his employees had sole responsibility for the work being performed on the vessel including the hot work. *Id.*

At midday, it was indicated that the workers performing the hotwork took a luncheon break. *Greiner Letter at 2-3, Deposition of Dennis Butts at 29-33.* Mr. Butts states that Ernest Carmin remained aboard as a fire watch for 30 or more minutes after the hot work ceased. *Greiner Letter at 2-3, Deposition of Dennis Butts at 29-33.* Before resuming work, the workers noticed smoke coming from the vessel; they went to the engine room and put out the fire in the bilge with a portable extinguisher. The fire department was called and responded but the fire was out before they arrived. *Greiner Letter at 2, Deposition of Dennis Butts.*

The fire department "investigation indicated that sparks from the welding operation ignited combustible materials in the engine room area." *Greiner Letter at 2.*

### III. LAW AND ARGUMENT

A bailment is the delivery of goods by their owner to another for a specific purpose, and the acceptance of those goods by the other, with the express or implied promise that the goods will be returned after the purpose of the delivery has been fulfilled. 9 *Williston on Contracts*, § 1030, pp. 875-76. It has long been established that the law of bailment is applicable to suits for damages to or loss of a vessel that has been left with another for purposes of repair. *See, e.g., Buntin v. Fletchas*, 257 F.2d 512, 513 (5th Cir. 1958); s*ee also T.N.T. Marine Service, Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 588 (5th Cir.), *cert. denied,* 464 U.S. 847, 104 S. Ct. 151, 78 L. Ed. 2d 141 (1983); *C. Itoh & Co. v. M/V Hans Leonhardt*, 719 F. Supp. 514 516 n. 2 (D.D.La.1989).

In this case it is undisputed that the Starrigavan was delivered into the custody of defendant Quality Marine for the purpose of having repairs performed. *Deposition of Dennis Butts at 14-17.* Dennis Butts is the president of Quality Marine and was "in charge" of the work being performed. *Deposition of Dennis Butts at 17.* Defendant was the only contractor working on the Starrigavan, and the only "hot work" being performed was welding by Quality Marine employees. *Deposition of Dennis Butts at 17, 24, 36-39.* More than likely the cause of the fire was the welding. *Deposition of Dennis Butts at 31.*

Generally, in order for a bailee to be held liable for damage to the bailed object, the bailor must establish that the bailee acted negligently in the performance of its duties and that its negligence was the proximate cause of the damage. *Cf. Commercial Molasses Corp. v. N.Y. Barge Corp.*, 314 U.S. 104, 110, 86 L. Ed. 89, 62 S. Ct. 156 (1941). In

cases like the present case negligence can be inferred. *Goudy & Stevens, Inc. v. Cable Marine, Inc.*, 924 F.2d 16, 19 (1991). While the bailee's possession over the thing bailed (the Starrigavan) must be exclusive for the presumption to apply, this does not mean that any act of dominion by the bailor over the vessel would also negate the inference. *Id.* Rather, it implies that possession and control must be of such a nature as to permit a reasonable trier of fact to infer that the bailee is in the better, or sole, position to explain what actually happened. *Id.*

A rebutable presumption exists because the bailee is generally in a better position than the bailor to ascertain the cause of the loss, the law lays on it the duty to come forward with the information it has available. *Commercial Corp.*, 314 U.S. at 111. It "then becomes the duty of the bailee to come forward with the evidence to explain [its] default by showing facts and circumstances sufficient in law to exonerate [it] from liability for the damage." *Chanler v. Wayfarer Marine Corporation*, 302 F. Supp. 282, 1969 A.M.C. 1435, 1439 (D. Me. 1969) (quoting *Trawler Jeanne d' Arc v. Casco Trawlers*, 260 F. Supp. 124, 138 (D. Me. 1966)). In the present case, no facts or circumstances have been proffered by defendant which would place responsibility, or liability, on any other party.

In the absence of *any suggestion* by defendant of another explanation for the fire damage to the Starrigavan liability <u>must be</u> imposed upon defendant Quality Marine. In this case there were no crew from the Starrigavan on board or around the vessel at the time of the fire; but even if they had been courts have consistently held that mere access to the vessel by the bailor or its agents prior to the damage or loss does not affect the presumption. *See, e.g., Pan-American Petroleum Transportation Co. v. Robins Dry Dock*

*& Repair Co.*, 281 F. 97 (2d Cir. 1922) (that agents for the bailor were on board at the time the damage occurred did not change fact that bailee had exclusive possession of vessel under contract for repairs); *Harrison Bros. Drydock v. J.R. Atkins*, 193 F. Supp. 386 (S.D. Ala. 1961) (same); *Johnson's Branford Boat Yard v. The Yacht Altair*, 260 F. Supp. 841 (D. Conn. 1966) (same, where owner had visited and inspected the vessel the day of the sinking); *The English Whipple Sailyard v. The Yawl Ardent*, 459 F. Supp. 866 (W.D. Pa. 1978) (same, where owner and his family had slept on the yacht on one previous occasion and there was evidence that vessel had been under power on several occasions prior to its sinking); *See also, Goudy & Stevens, Inc. v. Cable Marine, Inc.*, 924 F.2d 16 (1991).

### IV. CONCLUSION/RELIEF REQUESTED

Because Quality Marine was in sole possession and control of the Starrigavan while performing hot-work and repairs, a reasonable trier of fact can infer that Quality Marine is in the better, or sole, position to explain what actually happened. Under these circumstances a presumption of negligence exists against Quality Marine. That presumption has not been overcome, nor has any alternative explanation fixing responsibility upon any other party been proffered by defendant. Common sense and applicable law are in agreement that liability for the fire damage rests solely with Quality Marine, and can't rest with any other party under the present facts. The only facts in dispute are those pertaining to damages. It is undisputed that Quality Marine was solely responsible for the welding, prep work, fire watch, and other relevant tasks. No issue of material fact with respect to liability remains for a jury to decide, and summary judgment in favor of plaintiff is therefore appropriate on that issue.

Dated this 30th day of November 2005.

ANTHONY M. URIE

_____
Anthony M Urie, WSBA No. 11711
Attorney for Plaintiff


JOSEPH WILLIAMS

_____
Joseph Williams, WSBA 34236
Attorney for Plaintiff